UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| RB MANAGEMENT, INC., a Pennsylvania corporation,<br><br>Plaintiff,<br><br>v.<br><br>C.T. CHARLTON & ASSOCIATES, INC., a Michigan corporation,<br><br>Defendant. | Civil Action No.<br><br>DEMAND FOR JURY TRIAL |

## COMPLAINT

Plaintiff RB Management, Inc. ("Plaintiff" or "RB Management"), by and through counsel, files this Complaint against Defendant C.T. Charlton & Associates, Inc. ("Defendant" or "CTCA"), and in support thereof states and alleges as follows:

### INTRODUCTION

1. RB Management is a wholly-owned subsidiary of Dorman Products, Inc. ("Dorman"), and provides sales-related services for Dorman.

2. Dorman is a global automotive solutions leader, founded and headquartered in the United States.

3. Since its inception, Dorman has been a pioneer problem solver for the automotive aftermarket, giving repair professionals and vehicle owners greater

freedom to fix cars and trucks.

4. Today, Dorman boasts a diverse catalog of more than 81,000 products, covering both light-duty and heavy-duty vehicles, from chassis to body, from underhood to undercar, and from hardware to electronics. RB Management is responsible for, *inter alia*, promoting sales of Dorman's products and servicing Dorman's customers.

5. In order to help deliver Dorman's catalog of products to customers, RB Management utilizes the services of various selling agents, who contract with RB Management to become selling agents for Dorman products.

6. As a condition of their retention, selling agents represent to RB Management and Dorman that they are skilled and have specific and unique knowledge of the automotive parts industry.

7. RB Management retained CTCA as a selling agent pursuant to a Manufacturers' Representation Agreement (the "Agreement"), dated September 1, 2018. Under the Agreement, CTCA agreed to use its best efforts to promote the sale of Dorman's products within a specified Territory, as defined by the Agreement. CTCA further agreed to maintain a minimum sales force to guarantee a level of service to Dorman's customers that kept RB Management, and by extension, Dorman, competitive in the Territory.

8. CTCA failed to perform as required under the Agreement. CTCA's

tenure as a selling agent lasted for 38 months and was defined by a series of persistent and significant deficiencies in performance.

9. CTCA routinely failed to meet sales targets, to maintain or increase Requests for Quote ("RFQs") at established accounts, to maintain a sales force capable of providing the necessary level of service to Dorman's customers, and failed to gain access at new accounts and drive new business.

10. In other words, CTCA's poor performance rendered RB Management, and by extension, Dorman, noncompetitive in the Territory, in material breach of the Agreement.

11. CTCA's failures and breaches of the Agreement have resulted in significant financial damages to RB Management in the form of lost revenue and other financial harm.

12. After CTCA materially breached the Agreement, thereby resulting in the termination the Agreement, RB Management and Dorman instructed CTCA to cease contact with Dorman's customers and to no longer represent themselves to customers as Dorman's selling agent. Despite this clear direction, CTCA continued to inundate Dorman's customers with communications and made efforts to set up meetings allegedly on Dorman's behalf, falsely representing to Dorman's clients that CTCA was still Dorman's agent, confusing Dorman's customers and causing further injury to RB Management.

## PARTIES

13. RB Management is a Pennsylvania corporation with its principal place of business at 3400 East Walnut Street, Colmar, Pennsylvania 18915.

14. Upon information and belief, CTCA is a Michigan corporation with its principal place of business at 24000 Greater Mack Ave., Saint Clair Shores, Michigan 48080.

## JURISDICTION AND VENUE

15. The Court has subject matter jurisdiction over RB Management's claims pursuant to 28 U.S.C. § 1332(a) because the dispute is between citizens of different States and the amount in controversy exceeds $75,000.

16. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) because, upon information and belief, CTCA resides in this district. Venue is also proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because the claims arose in this district and a substantial part of the events giving rise to the claims occurred in this district.

## FACTUAL BACKGROUND

### The Agreement

17. On September 1, 2018, RB Management and CTCA signed the Agreement.

18. A true and correct copy of the Agreement is attached hereto as

**Exhibit A**.

19. At all relevant times to this Complaint, the Agreement was a valid and enforceable contact between RB Management and CTCA.

20. Pennsylvania law governs the Agreement. *See* Agreement § 11.

21. Section 1 of the Agreement sets forth CTCA's duties as a selling agent for RB Management:

> RB MANAGEMENT hereby designates [CTCA] as its Sales Representative for that certain line of products identified on Appendix A of this Agreement (hereinafter Products), in and for the territory listed in Appendix A (hereinafter Territory). **[CTCA] agrees to use its best efforts to promote the sale of the Products to responsible creditworthy customers in the Territory. [CTCA] further agrees to maintain a minimum sales force guaranteeing a level of service to RB MANAGEMENT'S customers which results in no loss of competitiveness to RB MANAGEMENT in the Territory measured by both the number of customers and the profitability of those customers. RB MANAGEMENT's determination as to whether it is remaining competitive in the Territory shall be conclusive for the purpose of this Agreement.** RB MANAGEMENT however reserves the right to reject any orders solicited by [CTCA] when received by RB MANAGEMENT.

*See* Agreement § 1 (emphasis added).

22. Section 2 provided for CTCA's compensation structure and states, in relevant part:

> [. . .] each month during the term of this Agreement RB MANAGEMENT will pay or cause to be paid a

5

> monthly **sales commission of 5%** upon the net sales price of each order pertaining to [CTCA] Territory which has been accepted and shipped (the "Sales Commission") **plus** (in the event that the Sales Commission is less than $20,000) an amount equal to $20,000 minus the Sales Commission.

*See* Agreement § 2 (emphasis in original).

23. Thus, if CTCA's total Sales Commission for a given month was less than the $20,000 threshold, RB Management would pay CTCA the difference between the earned Sales Commission and $20,000 (the "Commission Floor Payment").

24. Should CTCA breach the Agreement, RB Management is entitled to damages, including attorneys' fees, caused by CTCA's breach.

25. Specifically, Section 6 provides, in relevant part:

> [CTCA] represents that it understands that the failure to comply with the provisions of this agreement will result in the actual damage to RB MANAGEMENT including but not limited to, its reputation, product strength, and profits, and as such agrees to indemnify RB MANAGEMENT for any and all damages, including reasonable attorney's fees, caused by any material breach of the terms and conditions of this agreement.

*See* Agreement § 6.

26. The Agreement ran for an initial period of one (1) year, with a term of September 1, 2018 to August 31, 2019. *See* Agreement § 7. Thereafter, the Agreement automatically renewed for successive two (2) year terms unless canceled

by written notice. *Id.*

## CTCA Failed To Perform Under The Agreement

27. CTCA's tenure as a selling agent for RB Management was defined by persistent and significant deficiencies in its performance.

28. Specifically, CTCA demonstrated a total and complete inability to gain access at new accounts and generate new business opportunities for RB Management.

29. Indeed, some of CTCA's sales actually came from accounts where RB Management and Dorman had long, pre-existing relationships that were originated and cultivated by RB Management and Dorman.

30. CTCA failed to maintain a sales force capable of providing the necessary level of service to Dorman's customers, in direct violation of CTCA's obligations under the Agreement.

31. CTCA routinely failed to meet sales targets and failed to increase or even maintain RFQs at established accounts.

32. As a result of CTCA's poor sales numbers, CTCA consistently earned less than $20,000 in monthly commissions.

33. As described above, the Agreement provides for a Commission Floor Payment, whereby RB Management would pay the difference between $20,000 and the amount of commission that CTCA earned in a given month.

34. The Commission Floor Payment ensured that CTCA received at least $20,000 per month in compensation.

35. The purpose of the Commission Floor Payment was to act as a failsafe and to protect CTCA, in the event they had a down month of sales. It was also designed to protect CTCA in the initial months of the Agreement, providing a guaranteed payment while CTCA was gaining traction with Dorman's existing and potential customers. No one, however, expected the contractual "floor" to represent CTCA's "ceiling" as a sales agent.

36. CTCA, however, only hit the $20,000 monthly threshold three times in the 38 months they served as a selling agent for Dorman products.

37. CTCA's failure to achieve sales above the contractual floor was a symptom of several material breaches of the Agreement on the part of CTCA, as set forth below.

38. Per the terms of the Agreement, RB Management has exclusive and conclusive authority to determine whether a sales agent is "remaining competitive in the Territory" to which they are assigned. *See* Agreement § 1. RB Management also, *inter alia*, reserved the right to "unilaterally modify the Products, Territory, Commission Rate and Commission Exceptions" subject to the Agreement. *See id.* § 11.

39. CTCA's low sales numbers and consistent poor performance rendered

RB Management, and by extension, Dorman, noncompetitive in the Territory in violation of the terms of the Agreement.

## CTCA Failed To Cure Its Breach

40. In early February 2021, RB Management and Dorman initiated the first of what would become a months-long series of telephone calls, emails, and in-person meetings with CTCA's executive leadership to discuss the significant and persistent issues with CTCA's performance.

41. During a telephone call with Kevin Dunleavy, Business Unit Director, OE/Heavy Duty for both Dorman and RB Management, Chris Charlton, the Chairman and Founder of CTCA, acknowledged CTCA's failures and asked RB Management and Dorman to give CTCA six months to remedy their poor performance and to demonstrate the value CTCA could provide as a selling agent.

42. In March, the Parties held a series of meetings during which CTCA further explicitly acknowledged that CTCA had failed to meet RB Management's and Dorman's expectations and promised to take a series of corrective measures to ensure RB Management and Dorman could once again be competitive in CTCA's Territory.

43. Specifically, CTCA promised to hire additional salespersons to support new and existing accounts, promised to implement specific plans to penetrate new accounts, and promised to drive RFQs with customers where CTCA had failed to

gain traction.

44. Based on the promises and assurances of CTCA's executive leadership, RB Management and Dorman agreed to provide CTCA with a six month period to remedy their deficient performance and to prove to RB Management and Dorman that CTCA could perform its obligations under the Agreement.

45. Despite these assurances, CTCA did not remedy its deficient performance.

46. Although RB Management and Dorman offered to provide direction and to share product and market knowledge with CTCA, few, if any, CTCA team members reached out for help. Instead, CTCA continued to do nothing to keep RB Management and Dorman competitive in the Territory.

47. In May, two months into CTCA's six-month cure period, RB Management and Dorman highlighted CTCA's lack of progress in emails, telephone conversations, and face-to-face meetings with CTCA's executive leadership. In response, CTCA offered empty promises and platitudes instead of plans and results.

### Despite RB Management's and Dorman's Best Efforts To Help CTCA Perform Under The Agreement, CTCA Failed To Follow Through On Its Promise To Perform In Accordance With Its Obligations Under The Agreement

48. For nearly nine months, RB Management and Dorman worked diligently with CTCA in an attempt to salvage the relationship. RB Management and

Dorman encouraged CTCA to improve its performance, dedicate sufficient resources to its accounts, formulate concrete and targeted strategic plans for existing and potential customers, and to follow through on CTCA's numerous promises.

49. Rather than working to improve, CTCA continued to deflect responsibility for its deficient performance and fell back on the same feeble excuses it had trotted out time and time again.

50. Despite repeated promises and assurances to RB Management and Dorman that CTCA would satisfy its obligations, there was no improvement in CTCA's performance.

51. The number and profitability of customers and accounts CTCA serviced did not increase in the manner they had promised, nor the manner that RB Management and Dorman expected, rendering RB Management and Dorman uncompetitive in the Territory.

52. CTCA failed to increase its salesforce to satisfy its obligations under the Agreement, failing to hire even a single additional salesperson to support potential and existing accounts.

53. CTCA promised to put together strategy presentations to demonstrate how CTCA would maintain competitiveness in the Territory. Each strategy presentation fell woefully short of expectations and failed to produce results, further reflecting that CTCA was not committing the time and resources necessary to

comply with its obligations under the Agreement.

54. During an August 24, 2021 telephone call with CTCA's leadership, RB Management and Dorman highlighted that CTCA had failed to improve its performance as it had promised at the outset of the six-month period.

55. In response, CTCA claimed that because RB Management and Dorman did not provide written notice of nonrenewal in March, the Agreement automatically renewed for a two-year term, regardless of CTCA's performance and assurances. CTCA's initial position, incredibly, was that the Agreement remained in effect regardless of whether CTCA performed its obligations under the Agreement.

56. CTCA, however, ultimately recognized it was not entitled to the benefits of the Agreement unless it performed in accordance with the Agreement's terms. In a September 24, 2021 email, Corine S. Streng, CTCA's Vice President, not only conceded CTCA's poor performance, but even offered "to reduce the retainer to 15k per month and remove the territory that has caused you some frustration, such as [listing accounts] **if we could renew the contract for an additional term**." (Emphasis added).

### As A Result Of CTCA's Persistent And Material Breaches Of The Agreement, Which CTCA Failed To Cure, The Agreement Was Terminated As A Matter Of Law

57. On November 5, 2021, RB Management and Dorman sent email correspondence to CTCA outlining the many ways CTCA's deficient performance

had materially breached the Agreement.

58. As a result of CTCA's material breach, RB Management and Dorman informed CTCA that the Agreement had been terminated and that CTCA was no longer a selling agent for RB Management or Dorman products.

59. Despite this unequivocal statement, CTCA continued to inundate Dorman's customers with communications allegedly on RB Management's or Dorman's behalf, attempting to set up meetings with CTCA's employees and falsely representing that CTCA was still a selling agent for Dorman products.

60. CTCA also pressured Dorman's customers to disclose information about those customers' business relationships with RB Management and Dorman, including sales figures on existing and expected orders.

61. RB Management and Dorman sent CTCA numerous emails instructing them to immediately cease and desist all contact with Dorman's customers, but despite no longer being a selling agent for Dorman products, CTCA's efforts to falsely represent themselves as such persisted for several weeks.

62. CTCA's false representations caused confusion in the market and caused RB Management to suffer reputational harm, which RB Management believes will continue to have lasting negative effects and cause RB Management to suffer additional damages in the future.

63. Although CTCA's material breach of the Agreement relieved

RB Management of any and all further obligations to CTCA that may have extended from the Agreement, RB Management and Dorman informed CTCA that they still hoped the parties could reach an amicable separation agreement. CTCA then initiated this action.

## COUNT ONE
### Breach of Contract

64. RB Management incorporates its responses to the preceding paragraphs as if set forth fully herein.

65. On September 1, 2018, RB Management and CTCA signed the Agreement.

66. At all relevant times to this Complaint, the Agreement was a valid and enforceable contract between RB Management and CTCA.

67. Under the Agreement, CTCA agreed, among other things, to:

> [. . .] use its best efforts to promote the sale of the Products to responsible creditworthy customers in the Territory. [CTCA] further agrees to maintain a minimum sales force guaranteeing a level of service to RB MANAGEMENT'S customers which results in no loss of competitiveness to RB MANAGEMENT in the Territory measured by both the number of customers and the profitability of those customers.

*See* Agreement § 1. The Products that CTCA was responsible for selling were Dorman products and the customers, along with being RB Management's customers, were customers of Dorman.

68. Despite these obligations, CTCA consistently failed to meet sales targets and was unable to gain access at new accounts and drive new business, thereby resulting in a loss of competitiveness to RB Management in the Territory.

69. CTCA also failed to maintain a minimum sales force capable of providing the necessary level of service required under the Agreement.

70. CTCA's poor performance and insufficient sales force rendered RB Management noncompetitive in CTCA's Territory, thereby materially breaching CTCA's obligations under the Agreement and resulting in lost sales opportunities and other financial harm.

71. After CTCA breached the Agreement, RB Management and Dorman instructed CTCA to cease contact with customers of Dorman products. Despite this clear direction, CTCA continued to inundate customers with communications and pressured them to disclose to CTCA information about those customers' business relationships with RB Management, falsely representing to RB Management's customers that CTCA was still a selling agent for Dorman products.

72. CTCA's false representations caused confusion in the market and caused RB Management to suffer reputational harm, which RB Management believes will continue to have lasting negative effects and cause RB Management to suffer additional damages in the future.

73. As a direct and proximate cause of CTCA's breach, RB Management

suffered damages in an amount to be proven at trial.

WHEREFORE, Plaintiff RB Management, Inc. requests that the Court enter judgment in its favor in an amount that will be proven at trial, but that exceeds $75,000, along with all fees and costs associated with bringing this action, and other such relief that the Court deems just and proper.

## COUNT TWO
## Unjust Enrichment

74. RB Management incorporates its responses to the preceding paragraphs as if set forth fully herein.

75. After CTCA materially breached the Agreement, which rendered the contract ineffectual, CTCA continued to demand and receive commission payments under the terms of the Agreement.

76. CTCA, therefore, obtained a significant benefit from RB Management in the form of commission payments CTCA was not entitled to as well as other financial benefits as a result of improperly pursuing activity as a selling agent on behalf of RB Management, without any authority or legal or factual basis to do so.

77. CTCA accepted and retained the unearned commission payments as well as other financial benefits, to RB Management's detriment.

78. CTCA, therefore, has been unjustly enriched without adequately or properly compensating RB Management.

WHEREFORE, Plaintiff RB Management, Inc. requests that the Court enter

16

judgment in an amount to be determined at trial, relating to unearned commissions paid to CTCA, along with all fees and costs associated with bringing this action, and other such relief that the Court deems just and proper.

### COUNT THREE
### Declaratory Judgment

79. RB Management incorporates its responses to the preceding paragraphs as if set forth fully herein.

80. There exists a present case or controversy between the parties, with adverse legal interests, of such immediacy and existence so to warrant a declaratory judgment.

81. The controversy between the Parties is with regard to the fact that: (a) CTCA's persistent material breaches of the Agreement resulted in the termination of the Agreement as a matter of law no later than November 5, 2021; and (b) after the termination of the Agreement, the Agreement was no longer in effect and RB Management had no further obligations to CTCA under the Agreement, financial or otherwise.

WHEREFORE, Plaintiff RB Management, Inc. requests a declaration from this Court affirming that CTCA's persistent material breaches of the Agreement resulted in the termination of the Agreement as a matter of law no later than November 5, 2021 and declaring that RB Management has no further obligations under the Agreement following termination thereof.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff RB Management, Inc. prays that:

(a.) Judgment be entered in RB Management's favor and against Plaintiff on RB Management's Complaint;

(b.) RB Management be awarded its costs of suit and reasonable attorneys' fees; and

(c.) The Court award RB Management such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff RB Management, Inc. demands trial by jury of twelve (12) on all issues so triable.

Respectfully submitted,

**COZEN O'CONNOR**

Dated: January 21, 2022

/s/ Christopher S. Hennessy
Cozen O'Connor
123 N. Wacker Drive, Suite 1800
Chicago, IL 60606
 (312) 474-7900
chennessy@cozen.com
P84425

*Attorney for Plaintiff*
*RB Management, Inc.*